No. 29,359.

HERBERT M. LEAVITT, as Administrator of the Estate of John Gibbons, Deceased, *Appellee,* v. THE INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIPBUILDERS AND HELPERS OF AMERICA, *Appellant.*

(292 Pac. 928.)

Opinion filed November 8, 1930.

*J. H. Brady, N. E. Snyder* and *David F. Carson,* all of Kansas City, for the appellant.

*E. A. Enright,* of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Herbert M. Leavitt, as administrator of the estate of John Gibbons, deceased, against the International Brotherhood of Boilermakers, Iron Shipbuilders and Helpers of America, to recover on a claim for a death

benefit arising upon the alleged membership of Gibbons under the laws of the brotherhood. The brotherhood, it appears, is an unincorporated association organized under the laws of Kansas, and is doing business in Kansas and other states. Plaintiff recovered, and the defendant appeals.

The international organization, which is the highest tribunal of the order, is somewhat similar to a supreme lodge with subordinate lodges established throughout the country and which are referred to as locals. All male citizens over sixteen (16) years of age and less than ninety-one (91), working at some branch of the trades of boilermakers, iron shipbuilders and helpers of America, are eligible to become members and to obtain insurance in the amount of $1,000 each upon payment of an initiation fee and the payment of a fee of $1.30 on the first day of each month thereafter. One of the laws of the order is that an applicant "will be considered a member of this international brotherhood when his name is recorded on the records of the international brotherhood." There is a provision that when a member pays the dues to the local he shall be given a receipt in triplicate, the original to be given to the member, a duplicate forwarded to the supreme body and one retained by the subordinate lodge. Gibbons, it appears, had become a member of the brotherhood at some early time not shown, but had failed to pay his dues after October, 1920, and was suspended. On May 17, 1927, more than six and a-half years after suspension, he applied to a local in Boston for reinstatement, paid the fees required, and an order of reinstatement was made by the local. On June 2, 1927, five days after reinstatement, he died. At the time of his death he had not been recorded as a member on the records of the supreme body, nor did that body have notice of his membership until nine days after his death, when proofs of his death were sent in. No certificate or policy of insurance had been issued and no designation of a beneficiary was made to whom the benefits should go. The brotherhood was not an insurance company and the insurance provided for its members was contracted for and carried by an insurance company with which the international brotherhood had arranged for the insurance of its members in good standing. It appears that when an applicant becomes a member or is reinstated and his name is entered on the roll of membership of the supreme order, it is at once reported to the insurance company and a certificate or policy is issued to the member, which is transmitted to the supreme body and

forwarded by it to the member. When the application for the benefit was made to the supreme body the officers refused to recognize the claim, stating that under the laws of the order Gibbons was not a member of the brotherhood, as the laws specifically provided that an applicant is to be considered a member of the brotherhood when his name is recorded on the records as a member of the international brotherhood. His name was never so recorded. This law, it is insisted, was binding on all members, including those applying for membership or reinstatement as members. Until that was done, the contract of membership was not complete, and hence no insurance policy or certificate was ever issued. One of the provisions of the constitution was that death benefits would be paid only to a member who is in good standing in the international brotherhood at the time of his death. Within the laws of the order relating to membership Gibbons cannot be regarded as having been a member in good standing when he died, and no one could be so regarded until his name was enrolled on the records of the supreme body. It was competent for the brotherhood to provide when applicants should become members and when liabilities to members should arise. Persons joining a fraternal organization like the defendant are presumed to have knowledge of its laws respecting membership and are bound by them. The provision in the by-laws as to what was necessary to constitute membership cannot be overlooked or ignored. For reasons which the order deemed to be sufficient, it provided the steps necessary to be taken in order to make one a member of the order. These were prescribed, as well as the acts or omissions which would terminate membership. Anyone joining the order is bound by these laws and is deemed to have consented to them. For instance, the nonpayment of dues by a member within fixed times ends his membership. That is conceded to be a valid ground of termination and no reason is seen why a by-law providing what is necessary to constitute a membership is not as valid and controlling as one declaring what will operate to end a membership.

Again, the organization was effected under the Kansas statute. (R. S. 40-701.) It was a fraternal beneficiary association organized into a lodge system with ritualistic form of work, carried on for the benefit of its members and their beneficiaries and not for profit. The statute under which it was operating restricted the persons and classes to whom death benefits could be paid, and no one within the classes prescribed is claiming benefits for the death of Gibbons.

The claim is presented in this action by the administrator of Gibbons' estate. Nothing in the governing statute sanctions the payment of death benefits to an administrator. The plaintiff is claiming it in this action upon the theory that Gibbons had an interest in the fund created by fees and assessments which passed to him as administrator after the death of Gibbons. Under the law pertaining to such organizations a member has no interest in the fund and therefore it cannot pass to an administrator. This question was directly determined in *Pilcher v. Puckett,* 77 Kan. 284, 94 Pac. 132, wherein many authorities are cited in answer to a contention that the benefits should be paid to heirs and children of the insured or persons named in a will of the insured, and it was said:

"The certificate is no part of the estate of the member. (*Olmstead v. Benefit Society,* 37 Kan. 93, 14 Pac. 449.) It is inconsistent with the theory upon which benefit societies are organized that the proceeds of a benefit certificate should be considered assets of the member's estate. Otherwise, it would become liable for his debts and the costs of administration, something not within the contemplation and purpose for which such orders are established. The insured member himself has no interest in the fund; he possesses simply a power of appointment, which if not exercised, becomes inoperative." (p. 288.)

This authority is to the effect that a member of such an association has no interest in the fund and that in no event can it ever become a part of his estate. In *Boice v. Shepard,* 78 Kan. 308, 96 Pac. 485, it was said:

"While the beneficiary named in the certificate of a member of a fraternal benefit society may be changed by the member, in accordance with the laws of the society, the insured has no interest in the fund derived from his membership nor can such fund become a part of his estate or liable for his debts."

Besides the rule that the funds derived from membership dues do not become a part of the estate of a deceased member, the administrator who sues here is not one of the classes which the statute provides may take death benefits, and such benefits may not be paid to other recipients than those named in the statute. Aside from the fact that the statute does not provide that an administrator or executor may take or sue for the benefits provided, the plan and character of the order are inconsistent with an administrator becoming a beneficiary or obtaining the benefits provided by the order for the relief of the prescribed classes. To allow him to recover would frustrate the benevolent purpose to provide benefits to specified persons. It is not an order organized for profit or gain,

and the benefits provided by it cannot be applied to the payments of the debts of the deceased.

In *Eastman v. Association*, 62 N. H. 555, a person became a member of a fraternal benefit association substantially similar to the one in question and he had paid all fees and assessments when due and had secured a certificate reciting his admission and providing that upon his death there should be paid a sum not exceeding $2,000, upon due notice of his death, to such person or persons as he may designate as beneficiaries on the records of the association. No entry was made on the record book nor was any designation of a beneficiary made. It was held that it was no part of the object of the association to provide a fund for the deceased member's debts, and the certificate was neither payable to the administrator of his estate nor to assigns, heirs or legal representatives. It was said:

"By the contract he had the mere power of appointing the person who should receive the benefit. He was bound by the rules of the association, and could not change the beneficiary in a way not in conformity with them. (Citing cases.) Why he did not exercise his power of appointment it is unnecessary to inquire. He may not have decided in his mind who should receive it. He may have intended that his associate members should not be called upon to contribute the sums required to fulfill his contract with the association. The presumption is that he intended not to do what he omitted to do. (Citing authorities.) He had no pecuniary interest in his membership, and his personal representative, as such, can take no interest in it after his death. The benefit is not assets, for if the administrator can collect the money, it must go primarily to Gigar's creditors. The charter, by-laws, and certificate show that neither party had any such understanding. If he had exercised the power of appointment, the administrator could not maintain a suit to recover the money; and his neglect to exercise it does not give the administrator the power."

See, also, *Pilcher v. Puckett*, supra; *Worley v. Northwestern Masonic Aid Association*, 10 Fed. 227; *Masonic Aid Ass'n v. Jones et al.*, 154 Pa. St. 99; 1 Bacon on Life and Accident Insurance, 4th ed., § 310.

We conclude that the administrator cannot maintain the action and could not even if a right of action for the insurance existed in another.

The plaintiff invokes the rule of waiver or estoppel, but under the facts in the case it cannot be applied. There can be no estoppel as to things said and done by officers of the association which are

prohibited by statute or beyond their power. In no event can such a question be raised by plaintiff, who was not entitled to maintain an action against defendant on the claim he has set forth.

The judgment is reversed with the direction to enter judgment for the defendant.